Andrew G. Gunem, No. 354042
agunem@straussborrelli.com
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109

*Attorney for Plaintiffs and Proposed Class*
[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **DANIEL JIMENEZ JR**, **MARK HENDREN**, and **ERICA JARAMILLO**, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**OE FEDERAL CREDIT UNION**,<br><br>Defendant. | Case No. 4:24-cv-02746-JST<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge Jon S. Tigar<br>Courtroom 6 - 2nd Floor<br><br>Hearing Date:    January 29, 2026<br>Hearing Time:    2:00 p.m. |

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................... 1

II.    STATEMENT OF FACTS ........................................................................................... 1

III.   PROCEDURAL HISTORY ......................................................................................... 1

IV.    THE SETTLEMENT TERMS ..................................................................................... 2

    A.    Proposed Settlement Class ................................................................................. 2

    B.    The Settlement Fund .......................................................................................... 3

    C.    Settlement Benefits ............................................................................................ 3

    D.    Claims Process ................................................................................................... 5

    E.    Settlement Administrator ................................................................................... 5

    F.    Opt-Out and Objection Procedures ................................................................... 7

    G.    Release of Claims .............................................................................................. 8

    H.    Attorneys' Fees and Costs ................................................................................. 8

    I.    Class Representative Service Awards ................................................................ 9

    J.    Legal Authority .................................................................................................. 9

    K.    Argument ........................................................................................................... 9

    L.    The Settlement Satisfies Rule 23(a) ................................................................ 11

        1.    The Proposed Class is Sufficiently Numerous. ........................................... 11

        2.    The Settlement Class Satisfies the Commonality Requirement. .................. 11

        3.    Plaintiffs' Claims and Defenses are Typical of Those of the Settlement Class. .......... 12

        4.    Plaintiffs Will Adequately Protect the Interests of the Class. .................... 12

        5.    The Class is Ascertainable. ........................................................................ 13

    M.    The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement. ................... 13

    N.    The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e). ................. 15

        1.    The Strength of Plaintiffs' Case ................................................................. 17

2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation............... 18

3.    The Risk of Maintaining Class Action Through Trial ................................. 18

4.    The Amount Offered in Settlement ........................................................ 19

5.    The Extent of Discovery Completed and the Stage of Proceedings............................ 20

6.    The Experience and Views of Counsel ........................................................ 20

7.    Governmental Participants ............................................................. 21

8.    The Reaction of the Class Members to the Proposed Settlement............................... 21

9.    Lack of Collusion Among the Parties ...................................................... 21

10.   The Settlement Treats Settlement Class Members Equitably ...................................... 21

O.   The Court Should Approve the Proposed Notice Program............................... 22

P.   Appointment of the Settlement Administrator.................................................. 23

Q.   Appointment of Class Counsel ........................................................... 23

V.   CONCLUSION ............................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................ 10, 11, 14, 15

*Bloom v. City of San Diego*,
   No. 17-cv-02324, 2024 WL 1162103 (S.D. Cal. Mar. 18, 2024) ..................................... 20, 21

*Butler v. Sears, Roebuck & Co.*,
   727 F. 3d 796 (7th Cir. 2013) ........................................................................ 14

*Bykov v. DC Trans. Services, Inc.*,
   No. 2:18-cv-1692 DB, 2019 WL 1430984 (E.D. Cal. Mar. 29, 2019) .................................... 16

*Calderon v. Wolf Firm*,
   No. SACV 16-1622-JLS(KESx), 2018 WL 6843723 (C.D. Cal. Mar. 13, 2018) ................... 19

*Carter v. Vivendi Ticketing US LLC*,
   No. 2022-01981-CJC, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) ................................ 18

*Chester v. TJX Cos.*,
   No. 5:15-cv-01437ODW(DTB), 2017 WL 6205788 (C.D. Cal. Dec. 5, 2017) ..................... 18

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ........................................................................ 10

*Cochran v. Accellion, Inc.*,
   No. 5:21-cv-01887-EJD (N.D. Cal.) (June 30, 2021) ...................................................... 19

*Dennis v. Kellogg Co.*,
   No. 09-cv-1786-L(WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) .............................. 18

*Dickey's Barbeque Restaurants, Inc.*,
   No. 20-cv-3424 (N.D. Tex.) ........................................................................... 19

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ....................................................................... 11, 12

*Franklin v. Kaypro Corp.*,
   884 F.2d 1222 (9th Cir. 1989) ........................................................................ 17

*Gaston v. FabFitFun, Inc.*,
   No. 2:20-cv-09534, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) ......................................... 18

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ......................................................................... 16

---

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT – iii (Case No. 4:24-cv-02746-JST)

*Gribble v. Cool Transports Inc.*,
  No. CV 06-4863 GAF (SHx), 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ........................ 16

*Guy v. Convergent Outsourcing, Inc.*,
  No. C22-1558 MJP, 2023 WL 8778166 (W.D. Wash. Dec. 19, 2023) .................................... 12

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................ 13, 14, 17

*Hillman v. Lexicon Consulting, Inc.*,
  No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869 (C.D. Cal. April 27, 2017) ............... 20

*Holly v. Alta Newport Hosp., Inc.*,
  612 F.Supp. 3d 1017 (C.D. Cal. 2020) ......................................................................... 11

*Hudson v. Libre Technology Inc.*,
  No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May 13, 2020) ........................ 21

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) .............................................................................. 15, 19

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ........................................................................................ 17

*In re LinkedIn User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ............................................................................... 15, 19

*In re Marriott Int'l Customer Data Security Breach Litig.*,
  341 F.R.D. 128 (D. Md. 2022) ...................................................................................... 18

*In re Marriott Int'l, Inc.*,
  78 F.4th 677 (4th Cir. 2023) ......................................................................................... 19

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................................... 16, 21

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  MDL No. 14-2522, 2017 WL 2178306 (D. Minn. May 17, 2017) ..................................... 19

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
  No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ........................ 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019) ..................................................... 14

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ................................................................................... 12, 15

*Kastler v. Oh My Green*,

No. 19-cv-02411, 2022 WL 1157492 (N.D. Cal. Apr. 19, 2022)................................. 21

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ............................................................. 14

*Lilly v. Jamba Juice Co.*,
    308 F.R.D. 231 (N.D. Cal. 2014) ............................................................. 13

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ............................................................. 20

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ............................................................. 15

*Longest v. Green Tree Servicing LLC*,
    308 F.R.D. 310 (C.D. Cal. 2015) ............................................................. 13

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) ............................................................. 17

*Murillo v. Pacific Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010) ............................................................. 16

*Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*,
    303 F.R.D. 337 (E.D. Cal. 2014) ............................................................. 16

*Orantes-Hernandez v. Smith*,
    541 F. Supp. 351 (C.D. Cal. 1982) ............................................................. 11

*Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*,
    65 F. Supp. 3d 1046 (D. Or. 2014) ............................................................. 13

*Parsons v. Kimpton Hotel & Rest. Group, LLC*,
    No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019)......................................... 14

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................. 22

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ............................................................. 11

*Reyes v. Experian Info. Sols., Inc.*,
    No. SACV1600563AGAFMX, 2020 WL 466638 (C.D. Cal. Jan. 27, 2020) .......... 16

*Smith v. Triad of Ala., LLC*,
    No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017)............... 18

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)............................................................. 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................. 11

*Williams v. Oberon Media, Inc.*,
    468 F. App'x 768 (9th Cir. 2012) .......................................... 13

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................... 15

**Statutes**

California Unfair Competition Law, Cal. Bus & Prof. Code 17200 *et seq.* ............................. 2, 12

**Other Authorities**

*Manual for Complex Litigation (Fourth)* ............................................................ 9, 10, 11

William B. Rubenstein, 1 Newberg on Class Actions (5th ed.) .................................... 13

Wright, et al., Fed. Prac. and Proc. (2d ed. 1986) ...................................... 14

**Rules**

Federal Rules of Civil Procedure, Rule 23 ........................................ 11, 12, 13, 15, 16, 17, 22, 23

I.    **INTRODUCTION**

Plaintiffs[1] Daniel Jimenez Jr., Mark Hendren, and Erica Jaramillo ("Plaintiffs"), respectfully submit this Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support. Defendant OE Federal Credit Union ("OEFCU" or "Defendant" and together with Plaintiffs, the "Parties") has reviewed this filing and does not oppose this Motion. A copy of the Settlement Agreement and its exhibits are attached as **Exhibit 1**. The Settlement is fair, reasonable and adequate, warranting preliminary approval and notice should be distributed to Class Members.

II.    **STATEMENT OF FACTS**

In October 2023, OEFCU became aware that an unauthorized actor gained access to its network, and copied certain files from its systems (the "Data Incident"). ECF 16, ¶ 33. Defendant began notifying Plaintiffs and the Settlement Class about the Data Incident in April 2024. *Id.* The Data Incident involved Settlement Class Members' Personally Identifiable Information ("PII"), and Protected Health Information ("PHI"), including full names, dates of birth, Social Security numbers, driver's license numbers, state identification numbers, online account information, passport numbers, financial account information, health insurance information, and medical information (collectively defined herein as "Private Information"). ¶ 44.

III.    **PROCEDURAL HISTORY**

On May 8, 2024, Plaintiff Daniel Jimenez Jr. filed a class action complaint against OEFCU alleging various claims arising from the Data Incident. ECF 1. On May 21, 2024, Plaintiff Erica Jaramillo filed a class action complaint against OEFCU arising from the same Data Incident and alleging claims identical to those asserted in the *Jimenez* suit. On July 15, 2024, Plaintiffs filed an Amended Complaint on behalf of all Plaintiffs against OEFCU arising from the same Data Incident, and alleging various theories of liability, including the following causes of action: (i) negligence, (ii) negligence per se, (iii) breach of implied contract, (iv) invasion of privacy, (v)

---

[1] All capitalized terms herein shall have the same meanings as those defined in the Settlement Agreement, attached as **Exhibit 1**.

1    unjust enrichment, (vi) breach of fiduciary duty, (vii) violation of the California Unfair

2    Competition Law, Cal. Bus & Prof. Code 17200 *et seq.*, (viii) violation of the California Consumer

3    Privacy Act, (ix) violation of the California Customer Records Act, and (x) declaratory judgment.

4    ECF 16.

5           On August 30, 2024, Defendant filed a Motion to Dismiss Plaintiffs' Amended Complaint.

6    ECF 29. On September 27, 2024, the Parties filed a Motion to Stay Proceedings Pending Mediation

7    or, in the Alternative, for an Extension of Time to Respond to Defendant's Motion. ECF 36. On

8    September 30, 2024, the Court approved the stay by Order. ECF 37.

9           On December 10, 2024, the Parties attended a mediation with Bruce Friedman, Esquire of

10   JAMS. Despite good faith efforts by both sides, the Parties were unable to resolve the case at the

11   December 10, 2024 mediation. While the Parties did not reach a settlement at that time, they

12   continued to negotiate and after months of further intense negotiations, the Parties reached a

13   settlement in principle. Ahead of reaching a settlement in principle, the Parties fully briefed

14   Defendant's motion to dismiss, which was granted in part and denied by the Court on August 19,

15   2025. ECF 50.

16          Following extensive arm's length settlement negotiations and the exchange of informal

17   discovery, the Parties reached an agreement of the essential terms of settlement. Joint Declaration

18   of Plaintiffs' Counsel ("Joint Decl.," attached hereto as **Exhibit 2**). ¶¶ 10-15. The Parties then

19   spent time finalizing the full scope of the Settlement Agreement and executed the same on

20   November 19, 2025. *Id.*

21   **IV.    THE SETTLEMENT TERMS**

22          **A.  Proposed Settlement Class**

23          The Settlement will provide relief for the following Settlement Class: "All individuals

24   residing in the United States whose Private Information was compromised, or may have been

25   compromised, in the Data Incident discovered by OEFCU in October 2023, including all those

26   individuals who received notice of the breach." Settlement Agreement ("S.A.") ¶ 36. The number

27   of Class Members is approximately 220,131.

28

---

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT – 2 (Case No. 4:24-cv-02746-JST)

### B. The Settlement Fund

Under the Settlement Agreement, OEFCU shall fund a non-reversionary Settlement Fund ("Settlement Fund") in the amount of two million, three hundred thousand dollars and zero cents ($2,300,000.00). S.A., ¶ 43-44. The Settlement Fund shall be used to cover all Settlement Administration Costs, all valid Claims, Service Awards to the Class Representatives, and any attorneys' fees and expenses to Class Counsel and Plaintiffs' Counsel.

### C. Settlement Benefits

The Settlement provides for the following benefits:

**Reimbursement For Out-of-Pocket Losses**

Settlement Class Members may submit a claim for Out-of-Pocket Losses. All Settlement Class Members may submit a claim for up to Five Thousand Dollars and Zero Cents ($5,000.00) for reimbursement of Out-of-Pocket Losses. S.A., ¶51. "Out-of-Pocket Losses" are unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Incident including, without limitation, the following: (i) unreimbursed costs, expenses, losses or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of class member's personal information; (ii) costs incurred on or after August 19, 2023 associated with purchasing or extending additional credit monitoring or identity theft protection services and/or accessing or freezing/unfreezing credit reports with any credit reporting agency; and (iii) other miscellaneous expenses incurred related to any Out-of-Pocket Loss such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id.* Settlement Class Members who elect to submit a claim for Reimbursement of Out-of-Pocket Losses must provide to the Settlement Administrator the information required to evaluate the claim, including: (1) the Settlement Class Member's name and current address; (2) documentation supporting their claim; (3) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone; and (4) whether the Settlement Class Member has been reimbursed for the loss by another source. *Id.* A claim for reimbursement for Out-of-Pocket Losses may be combined with a claim for a Pro Rata Cash Payment and/or California

Settlement Class Payment. *Id.*

**Pro Rata Cash Payment**

All Settlement Class Members may submit a claim for a Pro Rata Cash Payment from the Net Settlement Fund, estimated at $50, with the final payment amounts adjusted up or down depending on the number of claims submitted, by submitting a Claim Form to the Settlement Administrator no later than the Claims Deadline. S.A., ¶49. The *Pro Rata* Cash Payment may be increased or decreased based on the number of valid claims submitted for this settlement benefit. *Id.*

**California Settlement Class Payments**

All California Settlement Class members may make a claim for a $75 payment. S.A. ¶54. This payment may be decreased *pro rata* based on the number of claims filed. *Id.*

**Additional Security Measures**

Defendant has confirmed that it has made certain changes to its information security and expended resources in connection with implementation of such information security following the Data Incident. S.A., ¶55. Costs associated with these security-related measures have been and will continue to be paid by Defendant separate and apart from other settlement benefits and separate and apart from the Settlement Fund.

**Class Notice**

The Parties have agreed on a comprehensive Notice Program, which includes Postcard Notice, Long Form Notice, Settlement Website, and Settlement telephone line. S.A., ¶¶ 65-66.

Within 30 days following entry of the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program using the forms of Notice approved by the Court. S.A., ¶ 65. Settlement Class members shall receive a Postcard Notice by mail. *Id.*

Settlement Class Members may request a Long Form Notice, review key documents and dates on the Settlement Website, and get answers to frequently asked questions by calling a toll-free telephone number. S.A., ¶ 71. The Notice, in forms similar to those attached to the Settlement Agreement as Exhibit 2, will inform the Settlement Class Members of the general terms of the

settlement, including a description of the Action, the identity of the Settlement Class, and what claims will be released. S.A., Ex. 2. It shall include, among other information: a description of the material terms; how to submit a Claim Form; the Claim Form Deadline; the Settlement Class Member opt-out deadline; the deadline for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees and Costs; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access the Agreement and other related documents and information. *Id.* Additionally, opt-out procedures will be explained, as well as how Settlement Class Members may exercise their right to object to the proposed Settlement and/or Application for Attorneys' Fees, Costs and Service Awards at the Final Approval Hearing. *Id.*, ¶ 67-69.

### D.  Claims Process

To receive Settlement Class Member Benefits, Settlement Class Members must accurately and timely submit a Claim by the Claims Deadline (90 days after the Notice Deadline). S.A., ¶ 5. Claim Forms may be submitted online through the Settlement Website or through U.S. Mail sent to the Settlement Administrator at the address designated on the Claim Form. *Id.*, ¶ 61. The Settlement Administrator will provide Settlement Class Members who submitted Valid Claims with their Settlement Class Member Benefits no later than 7 days after Final Approval if no appeals are taken from the Final Approval Order, or 14 days after the Effective Date, whichever is later. *Id.*, ¶ 12. Cash Payments will be made electronically or by paper check, by sending Settlement Class Members with Valid Claims and an email to select from alternative forms of electronic payment or by paper check. S.A., ¶ 40.

### E.  Settlement Administrator

Eisner Advisory Group LLC ("EAG") is a well-respected and reputable third-party administrator that has significant experience with data breach settlements. Joint Decl. ¶ 16; Declaration of Brandon Schwartz Regarding Settlement Administration and Notice Plan, ¶¶3-5. The Settlement Administrator shall effectuate the Notice Program, handle the Claims Process, administer the Settlement Fund, and distribute the Settlement Class Member Benefits to Settlement

Class Members. S.A. ¶ 71. The Settlement Administrator's duties include, *inter alia*:

a.     Completing the Court-approved Notice Program by noticing the Settlement Class by Email Notice (if email addresses are available), Postcard Notice, sending out Long Form Notices and paper Claim Forms on request from Settlement Class members, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Deficiency, and sending Settlement Class Member Benefits to Settlement Class Members who submit Valid Claims;

b.     Establishing and maintaining the Settlement Fund the Escrow Account approved by the Parties;

c.     Establishing and maintaining a post office box to receive opt-out requests from the Settlement Class, objections from Settlement Class members, and Claim Forms;

d.     Establishing and maintaining the Settlement Website to provide important information and to receive electronic Claim Forms;

e.     Establishing and maintaining an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the frequently asked questions of Settlement Class Members who call with or otherwise communicate such inquiries;

f.     Responding to any mailed Settlement Class Member inquiries;

g.     Processing all opt-out requests from the Settlement Class;

h.     Providing weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, Notice of Deficiency sent, opt-out requests and objections received that week, the total number of opt-out requests and objections received to date, and other pertinent information;

i.     In advance of the Final Approval Hearing, preparing a declaration for the Parties confirming that the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the number of Claim Forms received and the amount of each benefit claimed, providing the names of each Settlement Class Member who timely and properly requested

1   to opt-out from the Settlement Class, indicating the number of objections received, and other

2   information as may be necessary to allow the Parties to seek and obtain Final Approval;

3           j.      Distributing, out of the Settlement Fund, Cash Payments by electronic

4   means or by paper check;

5           k.      Sending Settlement Class Members who elect Credit Monitoring emails

6   instructing how to activate their Credit Monitoring service.

7           l.      Paying Court-approved attorneys' fees, costs, and Service Awards out of

8   the Settlement Fund;

9           m.      Paying Settlement Administration Costs out of the Settlement Fund

10  following approval by Class Counsel; and

11          n.      Any other Settlement administration function at the instruction of Class

12  Counsel and Defendant, including, but not limited to, verifying that the Settlement Fund has been

13  properly administered and that the Cash Payments and Credit Monitoring access information have

14  been properly distributed.

15  *Id.*

16      **F.  Opt-Out and Objection Procedures**

17          Consistent with the Settlement's opt-out procedures, the Long Form Notice details that

18  Settlement Class members who do not wish to participate in the Settlement may opt-out up to sixty

19  (60) days after the Notice Deadline. S.A., ¶ 23.  During the Opt-Out Period, they may mail an opt-

20  out request to the Settlement Administrator that includes the Settlement Class member's name,

21  address, telephone number, and email address (if any), and a statement indicating a request to be

22  excluded from the Settlement Class. Any Settlement Class member who does not timely and

23  validly request to opt-out shall be bound by the terms of this Agreement even if that Settlement

24  Class Member does not submit a Claim Form. *Id.*, ¶ 67

25          The Agreement and Long Form Notice also specify how Settlement Class members

26  may object to the Settlement and/or the Application for Attorneys' Fees, Costs and Service

27  Awards. Objections must be mailed to the Clerk of the Court, Class Counsel, Defendant's

28

Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period (sixty days (60) after the Notice Deadline), as specified in the Notice. S.A., ¶ 22. It must also set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards, and whether they will appear at the Final Hearing; (e) the number of times in which the objector's counsel and/or the objector's counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling on the objection issued by the trial and appellate courts in each such listed case; (f) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (g) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (h) the objector's signature (an attorney's signature is not sufficient). *Id.*, ¶ 69.

### G. Release of Claims

Plaintiffs and Settlement Class Members who do not timely and validly opt-out of the Settlement Class will be bound by the terms of the Settlement, including the Releases that discharge the Released Claims against the Released Parties.

### H. Attorneys' Fees and Costs

Under the Settlement Agreement, Plaintiffs will seek an award of attorneys' fees not to

1  exceed one-third of the Settlement Fund, or $766,666.66, as well as a reimbursement of Class

2  Counsel's reasonable out-of-pocket costs and litigation expenses actually incurred. The attorneys'

3  fees and costs will be formally sought in the Application for Attorneys' Fees, Costs, and Service

4  Awards field within the Motion for Final Approval at least thirty (30) days before the Opt-Out and

5  Objection Deadlines. S.A., ¶ 86. The Settlement is not contingent on approval of the requests for

6  attorneys' fees and costs, and if the Court denies the requests or grants amounts other than what

7  was requested, the remaining provisions of the Agreement shall remain in force. S.A., ¶ 88. The

8  Notice will advise the Settlement Class of the amounts of attorneys' fees that Class Counsel intends

9  to seek.

10  ### I.  Class Representative Service Awards

11  Subject to Court approval, the Plaintiffs will apply for the payment of a $5,000.00

12  Service Award to each of the Class Representatives for their service on behalf of the Settlement

13  Class. S.A., ¶ 84. The Settlement is not contingent on approval of the requests for Service

14  Awards, and if the Court denies the requests or grants amounts other than what was requested, the

15  remaining provisions of the Agreement shall remain in force. *Id.*.

16  ### J.  Legal Authority

17  Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which

18  court approval is required to finalize a class action settlement. Courts, including those in this

19  Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary

20  approval of the proposed settlement followed by (2) dissemination of court-approved notice to the

21  class and (3) a final fairness hearing at which class members may be heard regarding the settlement

22  and at which evidence may be heard regarding the fairness, adequacy, and reasonableness of the

23  settlement. *Manual for Complex Litigation (Fourth)* (2004) § 21.63.

24  Here, Plaintiffs request the Court take the first step, and grant preliminary approval of the

25  proposed Settlement Agreement.

26  ### K. Argument

27  Federal courts strongly favor and encourage settlements, particularly in class actions and

28

other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). More traditional means of handling claims like those at issue here—individual litigation—would unduly tax the court system, require massive expenditures of resources, and given the relatively small value of the claims of the individual class members, would be impracticable. Thus, a settlement—and specifically the Settlement Agreement proposed here—provides the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

The Manual for Complex Litigation (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." § 21.632. Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See Id.* Other certification issues, however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions," require heightened scrutiny in the settlement-only context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Plaintiffs here seek certification of Settlement Class consisting of:

> All individuals residing in the United States whose Private Information was compromised, or may have been compromised, in the Data Incident discovered by OEFCU in October 2023, including all those individuals who received notice of the breach Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct families; (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out

1    Deadline. S.A., ¶ 36.

2    For the reasons set forth below, the Court should certify the Class for settlement purposes

3 and grant preliminary approval of the Settlement.

4    **L.  The Settlement Satisfies Rule 23(a).**

5    Before assessing the parties' settlement, the Court should first confirm the underlying

6 settlement class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; *Manual for*

7 *Complex Litigation (Fourth)*, § 21.632. The requirements are well known: numerosity,

8 commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v.*

9 *Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011).

10    **1.  The Proposed Class is Sufficiently Numerous.**

11    While there is no fixed point where the numerosity requirement is met, Courts find

12 numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R.

13 Civ. P. 23(a)(1). "Where the exact size of the class is unknown but general knowledge and common

14 sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v.*

15 *Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Generally, Courts will find numerosity is satisfied

16 where a class included at least 40 members. *Holly v. Alta Newport Hosp., Inc.*, 612 F.Supp. 3d

17 1017, 1027 (C.D. Cal. 2020) (citing *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)).

18 Here, there are an estimated number of 220,131 Settlement Class Members. Accordingly, the

19 proposed settlement class easily satisfies Rule 23's numerosity requirement.

20    **2.  The Settlement Class Satisfies the Commonality Requirement.**

21    The Settlement Class also satisfies the commonality requirement, which requires that class

22 members' claims "depend upon a common contention," of such a nature that "determination of its

23 truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke."

24 *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases,

25 "[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality

26 requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-

27 TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Thus, common questions include, inter

28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT – 11 (Case No. 4:24-cv-02746-JST)

alia, whether OEFCU engaged in the wrongful conduct alleged; whether Class Members Private Information was comprised in the Data Incident; whether OEFCU owed a duty to Plaintiffs and Class members; whether OEFCU breached its duties; whether OEFCU was unjustly enriched; and whether OEFCU violated the California Unfair Competition Law, Cal. Bus & Prof. Code 17200 *et seq.*, the California Customer Records Act, and the California Consumer Privacy Act, as alleged in the Amended Complaint. These questions are the same across the Settlement Class, as OEFCU's policies and procedures relating to data security remained consistent throughout the time period encompassing the Data Incident. *See Guy v. Convergent Outsourcing, Inc.*, No. C22-1558 MJP, 2023 WL 8778166, at *3 (W.D. Wash. Dec. 19, 2023) (allegations regarding defendant's "failure to safeguard their PII consistent with industry standards" satisfied commonality).

Thus, Plaintiffs have met the commonality requirement of Rule 23(a).

### 3. Plaintiffs' Claims and Defenses are Typical of Those of the Settlement Class.

Plaintiffs satisfy the typicality requirement of Rule 23 because Plaintiffs' claims, which are based on Defendant's alleged failure to protect the Private Information of Plaintiffs and all members of the Class, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v. Portfolio Recovery Associates*, 707 F.3d 943, 1041-42 (9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their Private Information was compromised, and that they were therefore impacted by the same allegedly inadequate data security that they allege harmed the rest of the Settlement Class. *See Convergent Outsourcing*, 2023 WL 8778166, at *3 (finding allegations that personal information was compromised in data breach satisfied typicality requirement); *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

### 4. Plaintiffs Will Adequately Protect the Interests of the Class.

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th

Cir. 2011) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015).

Here, Plaintiffs have no conflicts of interest with other class members, are subject to no unique defenses, and they and their counsel have vigorously prosecuted this case on behalf of the class and continue to do so. Plaintiffs are members of the Class who allegedly experienced the same injuries and seek, like other Class Members, compensation for OEFCU's alleged data security shortcomings. As such, their interests and the interests of their counsel are consistent with those of other Class Members. The group of Plaintiffs contains individuals whose Private Information was compromised in the Data Incident, ensuring that the interests of all Settlement Class Members are adequately represented.

Further, counsel for Plaintiffs have extensive combined experience as vigorous class action litigators and are well suited to advocate for the Class. *See* Joint Decl., ¶ 18. Thus, Plaintiffs satisfy the requirement of adequacy.

### 5. The Class is Ascertainable.

Rule 23 also requires, at least implicitly, that the members of the proposed class be objectively ascertainable. *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1064 (D. Or. 2014). A proposed class must be "precise, objective, [and] presently ascertainable." *See Williams v. Oberon Media, Inc.*, 468 F. App'x 768, 770 (9th Cir. 2012) (quotation marks omitted) (alteration added). Class members must be identifiable through "a manageable process that does not require much, if any, individual factual inquiry." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 237 (N.D. Cal. 2014) (quoting William B. Rubenstein, 1 Newberg on Class Actions § 3:3 (5th ed.)). This requirement does not entail, however, that "every potential member . . . be identified at the commencement of the action." *Id.* (quotation marks omitted) (emphasis added). The purported class members have been identified through OEFCU's records.

### M. The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or

---

1   (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs allege that the Settlement Class is maintainable

2   for purposes of settlement under Rule 23(b)(3), as common questions predominate over any

3   questions affecting only individual members and class resolution is superior to other available

4   methods for a fair and efficient resolution of the controversy. *Id.*

5       The predominance requirement "tests whether proposed classes are sufficiently cohesive

6   to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing Wright, et al., Fed.

7   Prac. and Proc. § 1777, p. 518–19 (2d ed. 1986)). "If common questions 'present a significant

8   aspect of the case and they can be resolved for all members of the class in a single adjudication,'

9   then 'there is clear justification for handling the dispute on a representative rather than on an

10  individual basis,' and the predominance test is satisfied." *See Keegan v. Am. Honda Motor Co.*,

11  284 F.R.D. 504, 526 (C.D. Cal. 2012) (*quoting Hanlon*, 150 F.3d at 1022). To satisfy this

12  requirement, "common issues need only predominate, not outnumber individual issues." *Butler v.*

13  *Sears, Roebuck & Co.*, 727 F. 3d 796, 801 (7th Cir. 2013) (quotations omitted).

14      As discussed above, Plaintiffs allege that common questions predominate in this case over

15  any questions affecting only individual members. Plaintiffs' claims depend, first and foremost, on

16  whether OEFCU used reasonable data security measures to protect consumers' Private

17  Information. Importantly, questions about OEFCU's data security procedures at the time of the

18  Data Incident can be resolved, for purposes of settlement only, using the same evidence for all

19  Class Members, and thus is precisely the type of predominant question that makes a class-wide

20  settlement worthwhile. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)

21  ("When 'one or more of the central issues in the action are common to the class and can be said to

22  predominate, the action may be considered proper under Rule 23(b)(3) [.]'") (citation omitted).

23      Additionally, for purposes of settlement, a class action is the superior method of

24  adjudicating consumer claims arising from the Data Incident—just as in other data breach cases

25  where class-wide settlements have been approved. *See, e.g., In re Yahoo! Inc. Customer Data Sec.*

26  *Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019); *Parsons v. Kimpton Hotel &*

27  *Rest. Group, LLC*, No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019); *In re Anthem, Inc. Data*

28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT – 14 (Case No. 4:24-cv-02746-JST)

*Breach Litig.*, 327 F.R.D. 299, 316–17 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film*, 847 F.3d at 1123.

Also, because Plaintiffs seek to certify a class in the context of a settlement only, this Court need not consider any possible management-related problems as it otherwise would. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

In any event, no one member of the class an interest in controlling the prosecution of this action because Plaintiffs' claims and the claims of the members of the class are the same. Alternatives to a class action are either no recourse for tens of thousands of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. Here, there are 220,131 class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). A class action is therefore superior to other methods for the fair and efficient adjudication of the claims of Plaintiffs and the Class.

### N.  The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e).

"[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes

1   of judgment on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563AGAFMX,

2   2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020). Rule 23(e) provides that a proposed class action

3   may be "settled, voluntarily dismissed, or compromised only with the court's approval."

4   Moreover, "[t]he parties must provide the court with information sufficient to enable it to

5   determine whether to give notice of the proposal to the class.  If the parties make a sufficient

6   showing that the Court will likely be able to "approve the proposal" and "certify the class for

7   purposes of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to

8   all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). Thus, notice should

9   be given to the class, and hence preliminary approval should be granted, where the Court "will

10  likely be able to" finally approve the settlement under Rule 23(e)(2) and certify the class for

11  settlement purposes. *Id.*

12      "In evaluating a proposed settlement at the preliminary approval stage, some district courts

13  . . . have stated that the relevant inquiry is whether the settlement 'falls within the range of possible

14  approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Services, Inc.*, No. 2:18-

15  cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). That is, "preliminary approval

16  of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust*

17  *Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

18      As to the procedural component, "a presumption of fairness applies when settlements are

19  negotiated at arm's length, because of the decreased chance of collusion between the negotiating

20  parties." *Gribble v. Cool Transports Inc.*, No. CV 06-4863 GAF (SHx), 2008 WL 5281665, at *9

21  (C.D. Cal. Dec. 15, 2008). Likewise, "participation in mediation tends to support the conclusion

22  that the settlement process was not collusive." *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*,

23  303 F.R.D. 337, 350 (E.D. Cal. 2014). With respect to the substantive component, "[a]t this

24  preliminary approval stage, the court need only 'determine whether the proposed settlement is

25  within the range of possible approval.'" *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 479

26  (E.D. Cal. 2010) (*quoting Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

27      In sum, "the purpose of the preliminary approval process is to determine whether there is

28

1    any reason not to notify the class members of the proposed settlement and to proceed with a

2    fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006). To that end, the

3    Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and

4    adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense,

5    complexity, and likely duration of further litigation; (3) the risk of maintaining class action status

6    throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed

7    and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental

8    participant; (8) the reaction of the class members to the proposed settlement; and, (9) whether the

9    settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*,

10    654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon*, 150 F.3d at 1026. Rule 23(e) requires a court

11    to consider several additional factors, including that the class representative and class counsel have

12    adequately represented the class, and that the settlement treats class members equitably relative to

13    one another. Fed. R. Civ. P. 23(e).

14        In applying these factors, this Court should be guided foremost by the general principle

15    that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp.*, 884

16    F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding

17    public interest in settling and quieting litigation. This is particularly true in class action suits.").

18    Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally

19    fair, reasonable, and adequate, and should be preliminarily approved.

20        **1.    The Strength of Plaintiffs' Case**

21        Plaintiffs believe they have built a strong case for liability. Plaintiffs believe their claims

22    are viable and that they have a good chance of proving that OEFCU's data security was inadequate

23    and that, if they establish that central fact, Plaintiffs believe Defendant is likely to be found liable

24    for violations of the claims which Plaintiffs pled in their Amended Complaint. While Plaintiffs

25    believe they have strong claims and would be able to prevail, their success is not guaranteed. It is

26    "plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks

27    avoided here outweigh the opportunity to pursue potentially more favorable results through full

28

---

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT – 17 (Case No. 4:24-cv-02746-JST)

adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, No. 5:15-cv-01437ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the heavy obstacles and inherent risks Plaintiffs face with respect to the novel claims in data breach class actions, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favors preliminary approval of the Settlement. Joint Decl., ¶¶ 18-20.

### 2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation

While Plaintiffs are confident in their remaining claim, all cases, including this one, are subject to substantial risk. This case involves a proposed class of approximately 220,131 Settlement Class Members whose Private Information was involved in the Data Incident, each of whom would need to establish cognizable harm and causation, and a complicated and technical factual background.

Although nearly all class actions involve a high level of risk, expense, and complexity— "[t]hese general risks are heightened in data breach cases like this one." *Carter v. Vivendi Ticketing US LLC*, No. 2022-01981-CJC, 2023 WL 8153712, at *6 (C.D. Cal. Oct. 30, 2023); *see also Gaston v. FabFitFun, Inc.*, No. 2:20-cv-09534, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."). This case is no different in that it would present risk at class certification with no guarantee that the Court would certify Plaintiffs' proposed Class. Accordingly, this factor favors approval.

### 3.    The Risk of Maintaining Class Action Through Trial

As noted above, Plaintiffs would encounter risks in obtaining and maintaining class certification. Class certification in contested consumer data breach cases is not common— first occurring in *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *15-16 (M.D. Ala. Mar. 17, 2017). In a recent data breach case where classes were contested but ultimately certified, *In re Marriott Int'l Customer Data Security Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022),

1    the classes were decertified on appeal. *See In re Marriott Int'l, Inc.*, 78 F.4th 677, 680 (4th Cir.

2    2023).[2] The relative absence of trial class certification precedent in the relatively novel data breach

3    setting adds to the risks posed by continued litigation.

4            **4.    The Amount Offered in Settlement**

5            The Settlement makes significant relief available to Settlement Class Members in the form

6    of cash payments and additional security measures to be implemented by Defendant. The amount

7    of compensation per Class Member is substantial. Each Class Member will be entitled to choose

8    between reimbursement for out-of-pocket losses or *Pro Rata* Cash Payments, in addition to

9    payments for California Settlement Class Members. If they elect a *pro rata* cash payment, the

10   amount Class Members receive will be calculated *pro rata* according to the Settlement Agreement,

11   but is estimated by the Parties, based on their significant experience with settlements of this nature,

12   that it will be approximately $50 per Class Member. S.A., ¶ 49. This Settlement is a solid result

13   for the Class with its value per class member here is on par with or exceeding that in other data

14   breach settlements.[3] Because the Settlement amount here is similar to other settlements reached

15   and approved in similar cases, this factor reflects that the Settlement is fair. *See Calderon v. Wolf*

16   *Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7–8 (C.D. Cal. Mar. 13, 2018)

17   (comparing class settlement with other settlements in similar cases). Accordingly, this factor

18

19   _____

20   [2] The classes were then re-certified by the district court on remand. *See In re Marriott Int'l*
     *Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2023 WL 8247865, at *1 (D. Md. Nov. 29,
21   2023).

22   [3] *See, e.g. Dickey's Barbeque Restaurants, Inc.*, No. 20-cv-3424 (N.D. Tex.), Dkt. 62 (data breach
     class action involving more than 3 million people that settled for $2.3 million, or $0.76 per person);
23   *Cochran v. Accellion, Inc.*, No. 5:21-cv-01887-EJD (N.D. Cal.), ECF No. 32 (June 30, 2021) ($5
     million settlement fund for 3.82 million class members or approximately $1.31 per class member);
24   *In re Anthem, Inc. Data Breach Litig.*, No. 5:15md-02617 (N.D. Cal. Aug. 15, 2018) ($115 million
     settlement in medical information data breach for 79,200,000 Class Members; $1.45 per Class
25   Member); *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL No. 14-2522, 2017 WL
     2178306, at *1- 2 (D. Minn. May 17, 2017) ($10 million settlement for nearly 100 million Class
26   Members; 10 cents per Class Member); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D.
     Cal. 2015) ($1.25 million settlement for approximately 6.4 million class members; 20 cents per
27   class member).

28
     _____
            PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
                ACTION SETTLEMENT – 19 (Case No. 4:24-cv-02746-JST)

1  favors approval.

2      **5.    The Extent of Discovery Completed and the Stage of Proceedings**

3      Before entering into settlement discussions on behalf of class members, counsel should

4  have "sufficient information to make an informed decision." *Linney v. Cellular Alaska P'ship*, 151

5  F.3d 1234, 1239 (9th Cir. 1998). Here, Plaintiffs gathered all the information that was available

6  regarding OEFCU and the Data Incident including publicly-available documents regarding the

7  Data Incident. The Parties also informally exchanged non-public information concerning the Data

8  Incident and the Class size in preparation for mediation. *Id.* During the settlement negotiations,

9  the Parties exchanged informal discovery to the point where "the parties have sufficient

10  information to make an informed decision about settlement," including the strengths and weakness

11  of their respective cases. *See Linney*, 151 F.3d at 1239.

12      Class Counsel's extensive experience with representing plaintiffs in data privacy class

13  actions assisted Plaintiffs in efficiently litigating this matter on behalf of the Class. Joint Decl., ¶

14  17. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this

15  Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-

16  VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Accordingly, Plaintiffs are well-

17  informed about the strengths and weaknesses of this case.

18      **6.    The Experience and Views of Counsel**

19      Class Counsel initiated this lawsuit when OEFCU announced the Data Incident, which,

20  based upon publicly available information, potentially impacted approximately 220,131

21  customers. Having worked on behalf of the putative class since the Data Incident was first

22  announced, evaluated the legal and factual issues presented in this case, and dedicated significant

23  time and monetary resources to this litigation, proposed Class Counsel fully endorses the

24  Settlement. Courts "afford great weight to the recommendation of counsel with respect to the

25  settlement because counsel are better positioned than courts to produce a settlement that fairly

26  reflects each party's expected outcome in litigation." *Bloom v. City of San Diego*, No. 17-cv-

27  02324, 2024 WL 1162103, at *4 (S.D. Cal. Mar. 18, 2024) (Internal citation omitted); *Kastler v.*

28

---

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT – 20 (Case No. 4:24-cv-02746-JST)

*Oh My Green*, No. 19-cv-02411, 2022 WL 1157492, at *4 (N.D. Cal. Apr. 19, 2022) ("Courts may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement considering Plaintiff's likelihood of recovery.") (Internal citation and quotation omitted). Accordingly, this factor supports approval.

### 7.  Governmental Participants

There is no governmental participant in this matter. This factor is neutral.

### 8.  The Reaction of the Class Members to the Proposed Settlement

The Class Representatives fully support this Settlement, yet this factor is neutral given that notice has not yet been issued to the Class informing Class Members about the Settlement.

### 9.  Lack of Collusion Among the Parties

The Parties negotiated a substantial Settlement Fund. Class Counsel and Defendant's counsel are experienced in handling data breach class actions such as this one and fully understand the values recovered in similar cases. Joint Decl., ¶¶ 17-21. The terms of the Settlement were negotiated at arm's length and included a full-day mediation under the guidance of the mediator Bruce Friedman, Esquire of JAMS, who has considerable experience in mediating data breach class actions, and who is considered one of the top mediators in the country for data breach cases. Joint Decl., ¶ 10. The negotiations were vigorously contested, were negotiated over months of intense negotiations, and were non-collusive. *Bloom*, 2024 WL 1162103, at *4 (noting "that "the settlement was reached with the assistance of an experienced mediatory further suggests that the settlement if fair and reasonable.").

### 10. The Settlement Treats Settlement Class Members Equitably

Finally, Rule 23(e)(2)(D) requires that the settlement treats all class members as equitably as possible under the circumstances. In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Technology Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, *9 (S.D. Cal. May 13, 2020) (*quoting In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). Here, the Settlement

1    treats all Class Members equitably, taking into account the difference between Class Members
2    who may have potentially suffered out-of-pocket losses through the Data Incident, and those who
3    have suffered undocumented losses through the compromise of their Private Information in the
4    Data Incident. Each and every Class Member has the opportunity to make a claim for a *Pro Rata*
5    Monetary Payment, estimated to be $50. Additionally, the Settlement provides for a *Pro Rata*
6    monetary payment to all Settlement Class Members residing in California, estimated to be $75.
7    While Plaintiffs have been permitted to seek approval of service awards from this Court, as will
8    be explained in detail in Plaintiffs' Motion for Attorneys' Fees, Expenses and Class Representative
9    Service Awards, the contemplated Service Awards of $5,000 per Class Representative are in line
10   with awards granted in similar cases, is presumptively reasonable, and do not call into question
11   Plaintiffs' adequacy or the validity of the Settlement. Accordingly, this factor also weighs in favor
12   of approval.

13          **O.  The Court Should Approve the Proposed Notice Program**

14          Rule 23 requires that before final approval, the "court must direct notice in a reasonable
15   manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).
16   "The notice may be by one or more of the following:  United States mail, electronic means, or
17   other appropriate means." *Id.*

18          Notice to class members must apprise interested parties of the pendency of the action and
19   afford them an opportunity to potentially object to the settlement. Fed. R. Civ. P. 23(c)(2); *Phillips*
20   *Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Here, and after a competitive bidding process,
21   the Parties agreed to a robust notice program to be administered by an experienced third-party
22   settlement administrator EAG which will use all reasonable efforts to provide direct notice to each
23   potential Settlement Class Member via Postcard Notice through direct U.S. mail. Notice and
24   Settlement Administration Costs will be paid from the Settlement Fund. S.A., ¶ 47. The Settlement
25   Administrator will also establish a dedicated Settlement Website that will contain the Short Notice,
26   Long Notice, Claim Form, and other related documents. S.A., ¶ 65-66.

27          Accordingly, the Notice plan should be approved.

28
---

**P.  Appointment of the Settlement Administrator**

The Parties request that the Court appoint EAG to serve as the Settlement Administrator. EAG has a trusted and proven track record of supporting hundreds of class action administrations, with legal administration experience. Joint Decl., ¶ 16.

**Q.  Appointment of Class Counsel**

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel has extensive experience prosecuting class actions and data privacy class action cases. *See* Joint Decl., ¶ 18. Accordingly, the Court should appoint John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PLLC; Leanna A. Loginov of Shamis & Gentile, P.A., and Andrew G. Gunem of Strauss Borrelli PLLC, as Class Counsel.

**V.    CONCLUSION**

The $2,300,000 Settlement for 220,131 Class Members is a substantial recovery for the Class. Accordingly, Plaintiffs respectfully request this Court to grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement because the Settlement is fair, reasonable, and adequate. A copy of the Proposed Order Granting Preliminary Approval of Class Action Settlement is also submitted herewith for the Court's consideration.


Dated: November 20, 2025              By:  */s/ Andrew G. Gunem*
                                           Andrew G. Gunem
                                           **STRAUSS BORRELLI PLLC**
                                           One Magnificent Mile
                                           980 N Michigan Avenue, Suite 1610
                                           Chicago IL, 60611

---

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT – 23 (Case No. 4:24-cv-02746-JST)

Telephone: (872) 263-1100
Facsimile: (872) 263-1109
agunem@straussborrelli.com

John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA 90212
T: (858) 209-6941
jnelson@milberg.com

Leanna A. Loginov
**SHAMIS & GENTILE P.A.**
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
lloginov@shamisgentile.com

*Attorneys for Plaintiff and the Proposed Class*

**<u>CERTIFICATE OF SERVICE</u>**

I, Raina C. Borrelli, hereby certify that on November 20, 2025, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of

such filing to counsel of record via the ECF system.

DATED this 20th day of November, 2025.

STRAUSS BORRELLI PLLC

By:  */s/ Andrew G. Gunem*
       Andrew G. Gunem
       STRAUSS BORRELLI PLLC
       One Magnificent Mile
       980 N Michigan Avenue, Suite 1610
       Chicago IL, 60611
       Telephone: (872) 263-1100
       Facsimile: (872) 263-1109
       agunem@straussborrelli.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28