UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL JIMENEZ JR., et al.,<br>Plaintiffs,<br>v.<br>OE FEDERAL CREDIT UNION,<br>Defendant. | Case No. 24-cv-02746-JST<br>**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br>Re: ECF No. 56 |

Before the Court is Plaintiff's motion for preliminary settlement approval. ECF No. 56. The Court will deny the motion.

## I. BACKGROUND

### A. The Parties and Claims

Plaintiffs Daniel Jimenez Jr., Mark Hendren, and Erica Jaramillo are current or former customers of Defendant OE Federal Credit Union. ECF No. 16 ¶¶ 1–25. OEFCU is "the country's largest labor-based credit union." *Id.* ¶ 24. OEFCU possessed its customers' personally identifiable information ("PII") and protected health information ("PHI"), including: full names; Social Security numbers; dates of birth; bank and/or financial account information; Taxpayer Identification Numbers; driver's license numbers; usernames and passwords; passport numbers; medical procedure information; clinical or treatment information; medical provider names; and health insurance information. *Id.* ¶ 25.

OEFCU suffered a ransomware attack and data breach sometime between August 19, 2023 and October 29, 2023, resulting in unauthorized access to the PII/PHI of the named plaintiffs and the putative class. *Id.* ¶¶ 6–9. Plaintiffs allege that OEFCU failed to comply with the minimum standard of several cybersecurity frameworks and failed to engage in security measures that could

United States District Court
Northern District of California

United States District Court
Northern District of California

have averted the disclosure of their PII/PHI. *Id*. ¶¶ 70–71. Plaintiffs allege that they were "placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft" and that they could "incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach." *Id.* ¶¶ 102, 106. Plaintiffs' complaint alleges claims for negligence; breach of implied contract; invasion of privacy; unjust enrichment; violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; violation of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150; violation of the California Customer Records Act ("CCRA"), Cal. Civ. Code § 1798.90, et seq.; and declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq. *See id.* at 51–75. They bring their claims for themselves and on behalf of a class of "[a]ll persons identified by Defendant (or its agents or affiliates) as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach." *Id.* ¶ 154.

**B. Procedural Background**

On May 8, 2024, Plaintiff Daniel Jimenez filed the original complaint against OEFCU. ECF No. 1. On May 21, 2024 Plaintiff Erica Jaramillo filed a complaint against OEFCU alleging similar claims. ECF No. 56 at 8. On July 15, 2024, Plaintiffs jointly filed their first amended complaint. ECF No. 16. OEFCU moved to dismiss the complaint on August 30, 2024. ECF No. 29. After the filing of that motion, the case was briefly stayed to allow the parties to engage in mediation. When that effort failed, the Court set a briefing schedule on the motion, and ultimately granted it in part and denied it in part. ECF No. 50. The Court dismissed the breach-of-implied-contract claim and the CCRA claim brought by Erica Jaramillo with leave to amend; Plaintiffs' UCL claims with leave to amend; and Plaintiffs' claim for declaratory relief with prejudice. *Id*. at 16.

On August 20, 2025, the parties filed a joint notice of settlement and a request to stay the proceedings for 45 days. ECF No. 51. Plaintiffs thereafter filed a motion for preliminary approval of the class settlement. ECF No. 56.

United States District Court
Northern District of California

### C. Terms of the Settlement

The proposed settlement agreement resolves claims between OEFCU and the proposed settlement class, which includes "[a]ll individuals residing in the United States whose Private Information was compromised, or may have been compromised, in the Data Incident discovered by OEFCU in October 2023, including all those individuals who received notice of the breach." ECF No. 56 at 9; ECF No. 56-1 ("Proposed Settlement") ¶ 36.

Under the proposed settlement, OEFCU agrees to establish a non-reversionary settlement fund of $2,300,000.00. *Id.* ¶¶ 43–44. Each class member may submit a claim of up to $5,000 for reimbursement of out-of-pocket losses that are traceable to the data incident, such as the costs of credit monitoring or credit freezing. *Id.* ¶ 51. All settlement class members are also entitled to submit a claim for a pro rata cash payment from the net settlement fund, which is estimated to be $50, with adjustment up or down based on the number of claims filed. *Id.* ¶ 49. California class members can make a claim for an additional $75, which is subject to reduction based on the number of claimants. *Id.* ¶ 54. The settlement proposes to deduct the following amounts from the gross settlement amount: (1) $766,666.66 in attorney's fees; (2) $5,000 each to the three class representative as service awards; (3) an unspecified amount in litigation costs; and (4) an unspecified amount in settlement administration costs. *Id.* ¶¶ 84, 86, 88.

The settlement agreement seeks to appoint Eisner Advisory Group LLC as the Claims Administrator. The notice program includes: (1) a Notice of Settlement and Claim Form mailed through the USPS; (2) creation of a Settlement website; and (3) a toll-free telephone number through which class members can obtain additional information about the settlement. ECF No. 56-1 ¶¶ 66, 71.

Class members will have 90 days from the mailing of notice to submit a claim form, either by mail or online. *Id.* ¶¶ 4–5. The motion states that claims will be paid within seven days if no appeals are taken from the final approval, or 14 days after the effective date, whichever is later.[1]

[1] "Effective Date" is defined in the settlement agreement as seven days after final approval if there are no objections, or essentially within 14 days after final judgment, whichever is later. ECF No. 56-1 ¶ 12. As discussed below, this statement in Plaintiffs' brief about the payment of claims is not accurate.

*Id.* ¶ 12. Class members who wish to opt out will have sixty days after mailing of notice to submit a request for exclusion to the claims administrator. *Id.* ¶ 22. Similarly, class members who object to the terms of the settlement must send their written objection to Clerk of the Court, class counsel, defendant's counsel, and the settlement administrator within sixty days from the date on which Notice commences. *Id.* ¶ 13.

## II. JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1332(d)(2).

## III. LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Rule 23 requires courts to employ a two-step process in evaluating a class action settlement. First, the parties must show "that the court will likely be able to . . . (i) approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). In other words, a court must make a preliminary determination that the settlement "is fair, reasonable, and adequate" when considering the factors set out in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2). The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.,* 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)); *see also* Manual for Complex Litigation (Fourth) § 21.632 (2004) (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing"). "'The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge.'" *City of Seattle*, 955 F.2d at 1276 (quoting *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

If no class has yet been certified, a court must likewise make a preliminary finding that it "will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). If the court makes these preliminary findings, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.* Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

Within this framework, preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (quoting *Schwartz*, 157 F. Supp. 2d at 570 n.12). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026 (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). The proposed settlement must be "taken as a whole, rather than the individual component parts," in the examination for overall fairness. *Id.* Courts do not have the ability to "'delete, modify, or substitute certain provisions'"; the settlement "must stand or fall in its entirety." *Id.* (quoting *Officers for Justice*, 688 F.2d at 630).

**IV. DISCUSSION**

Plaintiffs move for (1) preliminary approval of the settlement agreement; (2) approval of

the form, manner, and content of the notice for the proposed settlement to the class; (3) appointment of Eisner Advisory Group as the Claims Administrator; and (4) appointment of John J. Nelson of Milberg Coleman Bryson Phillips Grossman, PLLC; Leanna A. Loginov of Shamis & Gentile, P.A., and Andrew G. Gunem of Strauss Borrelli PLLC, as Class Counsel. ECF No. 56 at 29–30. While some of the factors lend support for finding that the settlement agreement falls within the range of possible approval, there are a number of obvious deficiencies that prevent the Court from granting preliminary approval at this time.

First, the settlement utilizes a claims-made distribution process when it appears unnecessary. When as here, the Defendants have a method to identify the class members and can readily do so, a claims-made settlement is inappropriate. *In re MyFord Touch Consumer Litig.*, 2018 WL 10539266 (N.D. Cal. June 14, 2018). "The effect of not simply distributing relief to the known class members is that the defendant will likely pay out much less than it would if there were no claiming process." 4 Newberg and Rubenstein on Class Actions § 12:18 (6th ed.). A claims-made process is justifiable only when it is the best or only option available, as is often the case with consumer class actions involving retail products. *See, e.g., Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 696 (S.D. Fl. 2014) (approving claims-made process where defendant "presented evidence that they cannot, on a systemwide basis, determine" key information identifying class members or the type of relief for which they would be eligible). However, because a settlement "requiring a claim form imposes unnecessary costs or limits the number of class members who will receive a settlement, some justification is required before the Court will grant preliminary approval." *Rubio-Delgado v. Aerotek, Inc.*, No. 13-CV-03105-SC, 2015 WL 3623627, at *5 (N.D. Cal. June 10, 2015). The class members in this action are readily identifiable from OEFCU's records: they are former or current customers who received notices that their PHI/PII had been affected by a data breach. The settlement agreement notes:

> "Settlement Class List" means the list generated by OEFCU containing the full names and current or last known home addresses and email addresses for Settlement Class Members, which OEFCU shall provide to the Settlement Administrator within 10 days of the Preliminary Approval Order.

ECF No. 56-1 ¶ 37.

Second, Plaintiffs fail to provide information that would allow the Court to evaluate whether the settlement provides an adequate remedy to the class. "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiffs' expected recovery balanced against the value of the settlement offer." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (quotation and citation omitted). "This Court 'has more than once denied motions for approval where the plaintiffs provided no information about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims.'" *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 969 (N.D. Cal. 2019) (quoting *K.H. v. Sec'y of Dep't of Homeland Sec.*, No. 15-cv-02740-JST, 2018 WL 3585142, at *5 (N.D. Cal. July 26, 2018)). "This is because 'any fraction has a denominator, and without knowing what it is the Court cannot balance plaintiffs' expected recovery against the proposed settlement amount.'" *Id.* at 970 (quoting *K.H.*, 2018 WL 3585142, at *5). Here, Plaintiffs provide no information as to the maximum amount the class could receive if Plaintiffs prevailed on their claims at trial. On that score, Plaintiffs counsel says only the following:

> Based upon our collective substantial experience, it is our opinion that the proposed settlement of this matter provides significant relief to the members of the Settlement Class and warrants the Court's preliminary approval. The settlement is well within the range of other data breach settlements in the relief that it provides.

ECF No. 56-2 ¶ 18. This boilerplate language does not provide the Court with sufficient information to evaluate the reasonableness of the class's recovery. "'Plaintiffs seeking preliminary approval should show their work by explaining the relative value of their claims in significant detail.'" *Haralson*, 383 F. Supp. 3d at 970 (quoting *Eddings v. DS Servs. of Am., Inc.*, No. 15-cv-02576- VC, 2016 WL 3390477, at *1 (N.D. Cal. May 20, 2016)). Plaintiffs have not done so.

Third, the Plaintiffs have failed to supply "'enough information to evaluate the strengths and weaknesses of [their] case.'" *Haralson*, 383 F. Supp. 3d at 970 (quoting *Eddings*, 2016 WL 3390477, at *1). Instead, Plaintiffs provide only generic statements about the risks inherent to a class action, such as the "high level of risk, expense, and complexity" and "heavy obstacles and

inherent risks" through "class certification, summary judgment, and trial." ECF No. 56 at 24–25. Courts, including this one, have required more. *Haralson*, 383 F. Supp. 3d at 970; *see K.H.*, 2018 WL 3585142, at *5 (denying preliminary approval where "[p]laintiffs have not even attempted to provide 'hypothetical scenarios' that could produce various expected recoverable damages to measure against the proposed settlement amount" (citation omitted) (quoting *Stovall-Gusman v. W.W. Grainger, Inc.*, No. 13-cv-02540-JD, 2014 WL 5492729, at *2 (N.D. Cal. Oct. 30, 2014)); *Hunt v. VEP Healthcare, Inc.*, No. 16-CV04790-VC, 2017 WL 3608297, at *1 (N.D. Cal. Aug. 22, 2017) ("The motion for preliminary approval makes abstract gestures to the uncertainties of litigation, rather than offering a careful analysis of the claims and the strength or weakness of any potential defenses."); *Eddings*, 2016 WL 3390477, at *1 ("The plaintiffs list legal issues that this case might present and positions that the defendants might take, but they don't analyze those issues or evaluate the strength or weakness of defendants' positions. A party moving for preliminary approval should cite case law and apply it to explain why each claim or defense in the case is more or less likely to prove meritorious.").

Fourth, Plaintiffs' estimate that the pro rata settlement would provide a recovery of approximately $50 per class member is unsupported by any evidence and does not allow the Court to evaluate whether the settlement is fair. If the estimate is based on a low claims rate, that amplifies the Court's concerns about using a claims-made distribution process. Plaintiffs estimate the class to consist of over 220,000 individuals. ECF No. 56 at 9. After subtracting the proposed attorney fees, the estimated recovery per class member will be a little over $6. The total pool of funds for the pro rata distribution will be further reduced by settlement administration costs, incentive awards, and litigation costs. The pro rata share will also decline if any class members seek reimbursement of up to $5,000 of their out-of-pocket costs. In fact, if just over 300 Plaintiffs submit out-of-pocket reimbursement claims of $5,000, the pro rata share could dwindle to nothing for the remaining class members.

Fifth, Plaintiffs do not explain why the settlement provides a higher recovery for California class members. There is no California subclass with different claims that might explain the difference in recovery. "One sign that a settlement may not be fair is that some segments of the

United States District Court
Northern District of California

class are treated differently from others." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 808 (3d Cir. 1995). "Courts generally are wary of settlement agreements where some class members are treated differently than others." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010). "While differential treatment of class members may be appropriate where 'the settlement terms are rationally based on legitimate considerations,'" Plaintiffs have not provided any basis for differential treatment here. *Id*. (citing *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 131 (S.D.N.Y.1997)) (quotation omitted). Rule 23(e)(2)(D) of the Federal Rules of Civil Procedure requires that the settlement proposal treat class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). "[D]isparate treatment between class members increases the likelihood that the settlement agreement does not meet the Rule 23(e) standard." *Ferrington v. McAfee, Inc.*, No. 10-CV-01455-LHK, 2012 WL 1156399, at *8 (N.D. Cal. Apr. 6, 2012) (citations omitted).

Sixth, the motion does not accurately summarize the settlement. For example, the motion for preliminary approval states, "The Settlement Administrator will provide Settlement Class Members who submitted Valid Claims with their Settlement Class Member Benefits no later than 7 days after Final Approval if no appeals are taken from the Final Approval Order, or 14 days after the Effective Date, whichever is later. *Id.*, ¶ 12." ECF No. 56 at 12. But although Plaintiffs cite Paragraph 12 of the settlement agreement, that paragraph does not address the timing of payment to class members. That subject appears to be addressed in Paragraph 56, which states:

> Payment Timing. Payments for Approved Claims for reimbursement for Out-of-Pocket Losses, Pro Rata Cash Payments, and California Settlement Class Payments shall be issued in the form of an electronic payment or check mailed as soon as practicable after the allocation and distribution of funds are determined by the Settlement Administrator following the Effective Date. The Settlement Administrator shall utilize electronic payment methods wherever possible.

ECF No. 56-1 at 11. The timing set forth in Paragraph 56 is different from what is described in the motion. It also seems unlikely that the Settlement Administrator could pay any claims within 14 days of the Effective Date, as the motion states, because Paragraph 43 gives OEFCU thirty days after the Effective Date to establish the settlement fund.

United States District Court
Northern District of California

Finally, the motion does not comply with the Northern District of California's Procedural Guidelines for Class Action Settlements ("Guidelines"). *See* https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/procedural-guidance-class-action-settlements. "A movant's failure to address the issues discussed in the Guidelines is a proper ground for denying a motion for preliminary or final approval of a class action settlement." *Bakhtiar v. Info. Res., Inc.*, No. 17-cv-04559-JST, 2020 WL 11421997, at *8 (N.D. Cal. Jan. 30, 2020). Some of the guidelines that Plaintiffs fail to address include:

- As discussed above, Section 1(e) of the Guidelines' requirement to explain "[t]he anticipated class recovery under the settlement, the potential class recovery if plaintiffs had fully prevailed on each of their claims, and an explanation of the factors bearing on the amount of the compromise."
- Section 2 of the Guidelines' requirement that the parties identify the settlement administration process, how many settlement administrators submitted proposals, and what methods of notice and claims payments were proposed. The present motion fails to provide any of this information. The Guidelines also require parties to describe the anticipated administrative costs and the reasonableness of those costs in relation to the value of the settlement.
- Section 11(a) and 11(b) of the Guidelines' requirement that class counsel provide information about one or more prior past comparable settlements. While Plaintiffs provide some of the information required by Section 11(a) for certain past settlements such as class recovery in comparable data breach settlements, the motion lacks information about the total number of class members to whom notice was sent, the methods of notice, the number and percentage of claim forms submitted, the administrative costs, the attorney's fees and costs, and the total exposure if the plaintiffs had prevailed on every claim.

For these reasons, Plaintiffs' motion for preliminary approval of class action settlement is denied without prejudice to Plaintiffs' filing a revised motion correcting these deficiencies. The Court makes the following additional observation to assist the parties in that effort. The Court notes that Plaintiffs' counsel anticipates seeking an award of attorney's fees up to one-third of the common fund established by the settlement. ECF No. 56 at 15–16. The Court will not determine

appropriate fees until after a motion has been filed. However, the Court reminds the parties that, "[f]or more than two decades, the Ninth Circuit has set the 'benchmark for an attorneys' fee award in a successful class action [at] twenty-five percent of the entire common fund.'" *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 519 (N.D. Cal. 2020) (alteration in original) (quoting *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)), *aff'd*, 845 F. App'x 563 (9th Cir. 2021). Plaintiffs should justify any deviation from the attorney's fee benchmark. *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (noting that "the 25% benchmark can be adjusted upward or downward, depending on the circumstances").

**CONCLUSION**

For the reasons set forth above, the Court denies Plaintiffs' motion for preliminary approval of the settlement agreement. A revised motion for preliminary approval is due November 4, 2026.

**IT IS SO ORDERED.**

Dated: September 16, 2026

JON S. TIGAR
United States District Judge

United States District Court
Northern District of California